IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON EDWARD THOMPSON     *

v.              *     Civil Action No. CCB-14-895

CON MED HEALTH CARE      *
MANAGEMENT, INC., et al.
              *
             ***

## MEMORANDUM

The above-captioned civil rights complaint filed by self-represented plaintiff Jason Edward Thompson concerns his claim he was denied medical care by staff at the Wicomico County Detention Center where he served time as a prisoner. The defendants, medical care providers and the warden of the detention center, have filed motions to dismiss or in the alternative for summary judgment. (ECF Nos. 15, 20.) Mr. Thompson was advised of his right to file an opposition response to the motions, (ECF Nos. 16, 21), but has filed nothing further. The court finds a hearing in this matter unnecessary. S*ee* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, the defendants' dispositive motions, treated as motions for summary judgment, will be granted in their favor.

**Background**

Mr. Thompson states he has a cataract in his right eye that affects his vision. (ECF Nos. 1, 4.) He claims that when he arrived at Wicomico County Detention Center ("WCDC") on December 12, 2013, he informed the medical staff that in 2012, while previously incarcerated there, he was taken to an eye doctor where he was diagnosed with a cataract. He states he told the doctor at WCDC he needed to have the cataract removed, but was later informed by the defendants he would have to wait until he was released, using his State Medicaid insurance because WCDC would not pay for it. (*Id.*)

Mr. Thompson further claims that the cataract obstructed his vision so badly that on December 21, 2013, he slipped on a puddle of water he could not see on the floor of the housing unit where he was detained. (*Id.*) When he caught himself during the fall he hurt his arm, which continued to cause him pain through March 2014. He asserts the fall and the injury to his arm would not have happened had his vision been corrected. He further claims that the cataract causes him constant headaches. As relief he seeks an order requiring cataract surgery, an evaluation of his arm injury, and monetary damages. *Id.*[1]

Defendant Warden George Kaluromakis states that Mr. Thompson wears glasses for abnormal vision and informed medical staff that he had a cataract in his right eye when he arrived at WCDC. (ECF No. 15-3 at 18, 23, 27.) He maintains, however, that there was no indication that the cataract significantly impaired Mr. Thompson's vision. (ECF No. 15-2 at 26, 44.) On December 23, 2013, Mr. Thompson reported that he had fallen and hit his elbow on a table, resulting in a "knot" that hurt all the time. (ECF No. 15-3 at 18.) When Mr. Thompson was examined the only abnormalities found were redness and swelling. (*Id.*) Mr. Thompson gave no indication at that time that the fall he suffered was related to his cataract. (*Id.*)

Mr. Thompson's complaints regarding elbow pain were addressed three additional times in January 2014. On January 7, 2014, Mr. Thompson's elbow was x-rayed and the report showed no abnormalities such as a fracture, dislocation, or lesion. (*Id.* at 49.) On January 13, 2014, Mr. Thompson's complaint of elbow pain was addressed with a compress although no deformity or swelling was noted and he had full range of motion. (*Id.* at 12.) On January 21, 2014, Mr. Thompson reported that the knot in his elbow had disappeared, but that it continued to hurt. Examination again revealed no abnormality. (*Id.* at 10.) During his encounters with

---

[1] Because Mr. Thompson was released from custody on May 2, 2014, (ECF No. 15-3 at 28), his requests for an order requiring cataract surgery and an evaluation of his arm are moot.

medical staff in January 2014, Mr. Thompson did not attribute the elbow injury to the failure to provide him with cataract surgery.

Mr. Thompson was again seen for complaints of elbow pain on February 13 and 14, 2014. He claimed his hand had been "going numb" for approximately two weeks. (*Id*. at 7-8.) Again, the examination revealed no abnormality and there was no mention by Mr. Thompson that his poor vision caused his fall. He was released from custody on May 2, 2014, and the final medical note contains no mention of the cataract issue. (*Id*. at 28.)

Mr. Kaluromakis asserts he is entitled to dismissal of the claims against him because (1) Mr. Thompson did not exhaust administrative remedies; (2) there was no Eighth Amendment violation because the evidence does not reveal an objective need for cataract surgery; and (3) Mr. Kaluromakis enjoys qualified immunity. In support of his assertion that Mr. Thompson was required to exhaust administrative remedies, Mr. Kaluromakis states that Mr. Thompson was given a copy of the inmate handbook when he arrived at WCDC, which includes instructions on filing internal grievances, but did not file a grievance concerning his cataract. (ECF No. 15-4.)

Defendants Conmed Healthcare Management, Inc., Physician's Assistant Kevin Johnson,[2] and Registered Nurse Michelle Autry ("the medical defendants") assert facts in agreement with those asserted by Mr. Kaluromakis. (ECF No. 20.) In addition, the medical defendants state that Mr. Thompson submitted two grievances regarding medical care during his incarceration at WCDC, neither of which concerned his asserted need for cataract surgery or the elbow injury.[3] (ECF No. 20-4, ECF No. 20-5.) Those grievances were forwarded to medical staff for investigation and were resolved; thus, the medical defendants argue, Mr. Thompson

---

[2] Johnson is incorrectly named in the amended complaint as "Dr. Kevin Johnson." The Clerk will be directed to correct the docket to reflect his proper title.

[3] Kaluromakis supplemented his motion to dismiss or for summary judgment stating that the grievances referenced by the medical defendants had not been provided to counsel prior to filing the initial motion. (ECF No. 19.)

knew how to access the internal grievance procedure for complaints regarding medical care, but did not do so for the claims asserted here. The medical defendants assert they are entitled to dismissal of the claims against them because Mr. Thompson failed to exhaust administrative remedies and the Eighth Amendment claim lacks merit.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). But the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**Analysis**

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

(a) Applicability of administrative remedies
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of whether the relief sought is attainable through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). The court may not consider a claim that has not been exhausted. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner, and the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies as follows:

[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (citations omitted).

As a prisoner, Mr. Thompson is subject to the PLRA's exhaustion requirement. Mr. Thompson does not dispute the defendants' claims that he failed to exhaust administrative

5

remedies for his claims. Additionally, there is objective evidence establishing that Mr. Thompson knew about the internal grievance process, it was available to redress complaints regarding medical care, and he failed to avail himself of it for his cataract complaint. Accordingly, the undisputed evidence establishes as a matter of law that Mr. Thompson failed to exhaust his administrative remedies within the meaning of the PLRA.

Moreover, there is no evidence to support a finding that any of the defendants exhibited deliberate indifference to Mr. Thompson's need for medical care. To state an Eighth Amendment claim for denial of medical care, a plaintiff must show that the defendants' actions or failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). There is no evidence that Mr. Thompson made any defendant aware of his asserted need for cataract surgery, nor is there evidence that the injury to his elbow was a serious medical need.

Accordingly, the defendants are entitled to summary judgment in their favor. A separate order follows.


October 23, 2014         /S/
Date         Catherine C. Blake
       United States District Judge